UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────

CANDIDA DIAZ, INDIVIDUALLY AND AS
PARENT AND NATURAL GUARDIAN OF                25-cv-1241 (JGK)
N.D.,
                          Plaintiff,          MEMORANDUM OPINION
                                              AND ORDER
            - against -

NEW YORK CITY DEPARTMENT OF
EDUCATION, ET AL.,
                          Defendants.
─────────────────────────────────

JOHN G. KOELTL, District Judge:

The plaintiff, Candida Diaz — individually as parent and natural guardian of N.D. — brings this action against the New York City Department of Education (the "DOE") and Melissa Aviles-Ramos ("Aviles-Ramos"), in her official capacity as Chancellor of the New York City Department of Education. See Compl., ECF No. 1. The plaintiff seeks judicial review of the State Review Officer's ("SRO") decision concerning the DOE's offer of a free and appropriate public education ("FAPE") to N.D. for the 2021-22, 2022-23, and 2023-24 extended school years. See id. at 13.

In particular, the plaintiff seeks an order upholding the portion of the SRO's decision that affirmed the Impartial Hearing Officer's (the "IHO") determination that the International Institute of the Brain ("iBrain") was an appropriate unilateral placement for N.D. for the 2023-24 school year. See id. The plaintiff also seeks reversal of the portions of the SRO's

decision concluding that the plaintiff's claims for the 2021–22 school year were time-barred and that the DOE offered N.D. a FAPE for the 2022–23 and 2023–24 extended school years. See id. The plaintiff further asks the Court to direct the DOE to fully fund N.D.'s program at iBrain and to award reasonable attorney's fees and costs. See id. at 14.

On June 12, 2025, the plaintiff moved for summary judgment on all her requests for relief. See ECF No. 13. On July 11, 2025, the defendants cross-moved for summary judgment, seeking dismissal of the complaint in its entirety. See ECF No. 18. For the reasons that follow, the plaintiff's motion is **denied**, and the defendants' cross-motion is **granted**.

### I. Background

The following facts are based on the parties' supporting papers and relevant administrative records, and are undisputed unless otherwise noted.[1]

The plaintiff, Diaz, is the parent of N.D. N.D. is a minor child who has an acquired brain injury and has been diagnosed with, among other conditions, severe developmental delay, quadriplegia, periventricular leukomalacia, cerebral palsy,

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

epilepsy, and autism spectrum disorder. See Admin. Rec. 304, ECF No. 16.

On March 17, 2021, Diaz attended a meeting of the Committee on Special Education ("CSE") to develop N.D.'s individualized education program ("IEP"). Id. at 218. The CSE classified N.D. as having Multiple Disabilities rather than a Traumatic Brain Injury ("TBI") and recommended a 12:1+(3:1)[2] classroom placement. Id. The IEP also recommended that N.D. receive occupational therapy ("OT"), physical therapy ("PT"), and speech-and-language therapy ("SL") in 30-minute increments, as well as an assistive technology ("AT") device. Id. Diaz stated at the meeting that she wanted N.D. to use AT more; however, N.D. was ultimately not provided with any AT services to help him generalize his skills at using his AT device to communicate across multiple environments. Id.

On March 24, 2022, the CSE convened to develop N.D.'s IEP for the 2022-23 school year and recommended that N.D. receive the same services as the prior year. Id. Diaz again expressed concern that N.D. was not using the AT device sufficiently and revealed that it became increasingly difficult to communicate with N.D. Id. However, the DOE did not recommend additional AT services to N.D. to assist with his use of the AT device. Id.

---

[2] One teacher for twelve students plus one paraprofessional/aide per three students.

The DOE provided Diaz only an English-language copy of the proposed IEP, which Diaz alleges made it difficult for her to understand. Id.

On March 21, 2023, the CSE met to review N.D.'s IEP for the 2023-24 school year. The CSE again recommended a 12:1+(3:1) classroom placement and that N.D. receive OT and PT twice per week for 30 minutes per session, and SL three times per week for 30 minutes per session. Id. Diaz raised the same concerns regarding N.D.'s lack of AT use, but the DOE again did not recommend AT services for N.D. Id. Diaz also expressed concern about N.D.'s progress with PT, but the DOE did not recommend any additional services and represented that the issue had been addressed in the recommended IEP. Id. at 218-19. The DOE provided Diaz only with an English-language copy of the proposed IEP, which identified the public school to which the DOE assigned N.D. to for the 2023-24 school year. Id. at 9, 444.

Diaz nonetheless unilaterally placed N.D. at iBrain, and N.D. began attending iBrain on September 11, 2023. Id. at 10. By letter dated March 20, 2024, Diaz advised the DOE that she disagreed with the March 2023 CSE recommendations and that she had not received notice of a school location for N.D. to attend for the 2023-24 school year. Id. Diaz further stated that, as a result, she intended to unilaterally place N.D. at iBrain for the

4

2023-24 extended school year and to seek public funding for the costs of that placement. Id.

## II. Procedural History

By a Due Process Complaint ("DPC") dated April 19, 2024, Diaz initiated this due process proceeding, alleging, among other things, that the DOE denied N.D. a FAPE for the 2021-22, 2022-23, and 2023-24 school years, that iBrain was an appropriate unilateral placement, and that equitable considerations favored relief under the Burlington/Carter framework. Id. at 348-61. Following a due process hearing, an Impartial Hearing Officer issued a Findings of Fact and Decision ("FOFD") dated July 15, 2024. Id. at 30-70.

In the FOFD, the IHO denied the DOE's motion to dismiss Diaz's claims relating to the 2021-22 school year as time-barred because the DOE failed to develop the record. Id. at 50. The IHO found that the DOE failed to provide N.D. with a FAPE for the 2021-22, 2022-23, and 2023-24 school years, and that iBrain was an appropriate placement that addressed N.D.'s individual special-education needs. Id. at 53, 58. However, the IHO concluded that equitable considerations did not favor Diaz under the third prong of the Burlington/Carter analysis and therefore denied Diaz's request for two years of tuition as compensatory education for the 2021-22 and 2022-23 school years, tuition and transportation funding for the 2023-24 school year, and her

5

request for attorney's fees. Id. at 61, 64. The IHO ordered the DOE to conduct a neuropsychological evaluation, an AT evaluation, and a functional vision assessment of N.D. Id. at 64.

Diaz appealed to the State Education Department's Office of State Review ("OSR") the IHO's denial of her request for tuition and special transportation funding for the 2023-24 school year. Id. at 85, 88-92. Diaz did not, however, appeal the IHO's denial of relief for her claims relating to the 2021-22 and 2022-23 school years — namely, her request for two years of tuition as compensatory education. See id. at 18. The DOE cross-appealed the IHO's denial of its application to dismiss Diaz's claims for 2021-22 school year as time-barred and the IHO's determinations that the DOE failed to provide N.D. a FAPE for the 2021-22, 2022-23, and 2023-24 school years. Id. at 7.

SRO Justyn P. Bates, issued a decision dated October 11, 2024. Id. at 7-29. As the SRO noted, because Diaz did not appeal the IHO's denial of relief in the form of two years of iBrain tuition as compensatory education for the 2021-22 and 2022-23 school years, the IHO's denial of relief as to those years became final and binding and "any analysis of the merits of the parent's claims pertaining to the 2021-22 (even if it was not barred by the statute of limitations) and 2022-23 school years has been rendered academic." Id. at 18. The SRO nevertheless concluded that Diaz's claims relating to the 2021-22 school year

6

were barred by the statute of limitations. Id. at 17. The SRO also concluded that the DOE offered N.D. a FAPE for the 2022-23 and 2023-24 school years. Id. at 18, 29. The SRO affirmed the IHO's holding that iBrain was an appropriate private placement for N.D. Id. at 29.

Because the SRO found that the DOE offered N.D. a FAPE for the 2023-24 school year, the SRO did not reach equitable considerations for that year to determine whether Diaz was entitled to her requested relief. Id. at 29. In a footnote, however, the SRO stated that, were the SRO to reach that issue, the SRO "would not have disturbed the IHO's denial of tuition funding for the 2023-24 school year on equitable grounds." Id. at 29 n.14.

For the same reason, the SRO vacated the IHO's order requiring the DOE to conduct additional evaluations. Id. at 28-29. The SRO nevertheless directed the DOE to fund an independent neuropsychological evaluation of N.D., subject to the district's criteria, because the DOE had failed to introduce the student's most recent neuropsychological evaluation into evidence. Id. at 28.

### III. Legal Standards

Congress enacted the IDEA to ensure that students with disabilities receive an education that adequately addresses their specific needs. See Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 239 (2009). The IDEA provides that "[s]tates receiving

7

federal funds [must] provide all children with disabilities with a FAPE," which includes "special education and related services tailored to meet the unique needs of a particular child." Mr. P v. W. Hartford Bd. of Educ., 885 F.3d 735, 741 (2d Cir. 2018) (citing 20 U.S.C. §§ 1401(9), 1412(a)(1)(A)).

New York's IDEA regulations closely track the IDEA statute. See P.C. v. Rye City Sch. Dist., 232 F. Supp. 3d 394, 408 (S.D.N.Y. 2017); see also N.Y. Educ. Law §§ 4401 to 4410-b. In New York, IEPs that outline how a FAPE will be provided are formulated annually by a local CSE, consisting of school board representatives, educators, clinicians, and parents. N.Y. Educ. Law § 4402; see also Hardison v. Bd. of Educ., 773 F.3d 372, 376 (2d Cir. 2014). In formulating IEPs, the CSE must evaluate the student's educational status and areas of need to determine the appropriate educational program. N.Y. Educ. Law § 4402; R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 175 (2d Cir. 2012). Through the IEP, the CSE outlines the student's goals for the upcoming school year and makes recommendations designed to help the student achieve those goals and make educational progress. 20 U.S.C. § 1414(d). "A school district meets its obligations to provide a FAPE by creating an IEP that is developed in compliance with the IDEA's procedural and substantive requirements." N.B. v. N.Y.C. Dep't of Educ., 711 F. App'x 29, 32 (2d Cir. 2017). It is important to note that "[w]hat the statute

guarantees is an appropriate education, not one that provides everything that might be thought desirable by loving parents." Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 132 (2d Cir. 1998).

Should a student's parent disagree with the CSE's recommendation or "any matter relating to the identification, evaluation or educational placement of the student or the provision of a [FAPE] to the student[,]" the parent is entitled to submit a Due Process Complaint. N.Y. Educ. Law § 4404(1); see also 20 U.S.C. § 1415(b)(6)(A). DPCs are heard in the first instance at an impartial due process hearing conducted by the state or local education agency. See 20 U.S.C. § 1415(f). Then, a parent or school district may appeal an adverse decision to the appropriate state agency. See id. § 1415(g); N.Y. Educ. Law § 4404(2). Once this administrative process is exhausted, either party may file a civil action in federal or state court challenging the administrative decision. See 20 U.S.C. § 1415(i)(2)(A); N.Y. Educ. Law § 4404(3).

In federal court, summary judgment "is a pragmatic procedural mechanism for reviewing administrative decisions." T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 252 (2d Cir. 2009). In reviewing an action pursuant to 20 U.S.C. § 1415(i)(2)(C), the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear

9

additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." See P.C., 232 F. Supp. 3d at 406.

The court's standard of review is "a more critical appraisal of the agency determination than clear-error review but falls well short of complete de novo review." L.O. ex rel. K.T. v. N.Y.C. Dep't of Educ., 822 F.3d 95, 108 (2d Cir. 2016). While the district court independently reviews the administrative record and makes a determination based on a preponderance of the evidence, it is "expected to give due weight to [administrative] proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." Walczak, 142 F.3d at 129; see also M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 240 (2d Cir. 2012).

## IV. Discussion

In her motion, Diaz argues that the SRO's decision is not entitled to deference and raises three issues on review: (1) whether the SRO erred in concluding that Diaz's claims relating to the 2021-22 school year were barred by the statute of limitations; (2) whether the SRO erred in concluding that the DOE provided N.D. a FAPE for the 2022-23 and 2023-24 school years; and (3) whether the SRO erred by failing to address equitable

10

considerations. Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") 1, ECF No. 14. The DOE's cross-motion parallels Diaz's motion and argues against the issues Diaz raised. See Defs.' Mot. for Summ. J. ("Defs.' Mot."), ECF No. 19.

**A.**

Diaz argues, as a threshold matter, that the SRO's decision is not entitled to deference because it is not well-reasoned and because it reversed the IHO's determination in part. Pl.'s Mot. 8-9. However, the SRO's decision in this case bears all of the hallmarks of an administrative decision that merits deference from this Court. Accordingly, the Court should afford that decision considerable weight.

In reviewing an action pursuant to the IDEA, the district court "shall receive the records of the administrative proceedings [and] hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C); see P.C., 232 F. Supp. 3d at 406. A district court should defer to administrative findings where the district court's decision "is based entirely on the same evidence as that before the SRO." M.H., 685 F.3d at 244. In this case, the parties submitted a joint letter stipulating that "no discovery will be necessary in this matter" and that "the [p]arties' motions will be based solely on the administrative record." ECF No. 11. Because the Court's decision will be based

on the same evidence that was before the SRO, the Court should defer to that administrative decision.

Additionally, a district "court must defer to the SRO's decision on matters requiring educational expertise unless it concludes that the decision was inadequately reasoned." R.E., 694 F.3d at 189. The Supreme Court has instructed reviewing courts to be careful not to "substitute their own notions of sound educational policy for those of the school authorities which they review." Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982).

Of the three issues Diaz raises, the SRO's conclusion that the DOE offered N.D. a FAPE for the 2023-24 school year warrants particularly substantial deference because it rests on pedagogical judgments. The SRO reviewed the DOE's evaluation of N.D. and the information gathered through the March 2023 administration of the Student Annual Needs Determination Inventory ("SANDI"), the New York State Alternate Assessment ("NYSAA"), the School Function Assessment ("SFA"), the Gross Motor Function Classification System ("GMFCS"), and teacher observations. Admin. Rec. 23-24. The SRO also examined the 2022 and 2023 IEPs and concluded that the DOE's recommendation of a 12:1+(3:1) special class placement was appropriate in light of N.D.'s need for intensive support and a highly structured environment, given his cognitive, physical, and emotional challenges. Id. at 25-26.

12

Because the SRO's decision is based on several forms of educational expertise and requires the sort of educational judgment and experience of state officers, it is entitled to substantial deference.

Having concluded that the SRO's determination involved matters requiring educational expertise, courts must also consider whether the SRO's decision was well-reasoned. An SRO decision is well-reasoned when it "conduct[s] a thorough review of the entire record . . . and clearly explain[s] the bases for [its] conclusions." M.W. ex rel. A.W. v. Bd. of Educ., No. 12-cv-1476, 2013 WL 2631068, at *23 (S.D.N.Y. June 12, 2013), aff'd sub nom., Ward ex rel. A.W. v. Bd. of Educ., 568 F. App'x 18 (2d Cir. 2014).

In this case, the SRO conducted a thorough review of the record. The SRO assessed the evidence concerning N.D.'s abilities and progress, see Admin. Rec. 19-24, evaluated the sufficiency of the evaluative information before the CSE, see id., and addressed the appropriateness of the recommended IEP, see id. at 25-27. The SRO also explained the basis for its conclusions with sufficient clarity to permit meaningful judicial review. Therefore, although Diaz argues that the SRO's decision was not well-reasoned, see Pl.'s Mot. 8-9, the record shows otherwise.

13

Overall, because the SRO thoroughly reviewed the evidence and adequately explained its conclusions, its determination — particularly its conclusion that the DOE offered N.D. a FAPE for the 2023-24 school year — is entitled to deference.

**B.**

Diaz argues that the SRO erred in concluding that her claims relating to the 2021-22 school year were time-barred because, she contends, the record contains no evidence that she knew or should have known of the alleged violations or that she received the requisite notice. Pl.'s Mot. 9—12.

Pursuant to amendments to the IDEA that took effect in July 2005, a parent must "request an impartial due process hearing within 2 years of the date the parent . . . knew or should have known about the alleged action that forms the basis of the complaint." 20 U.S.C. § 1415(f)(3)(C); see Somoza v. N.Y.C. Dep't of Educ., 538 F.3d 106, 114 n.7 (2d Cir. 2008). Determining when a parent knew or should have known of the discriminatory act "is necessarily a fact-specific inquiry." K.H. v. N.Y.C. Dep't of Educ., No. 12-cv-1680, 2014 WL 3866430, at *16 (S.D.N.Y. Aug. 6, 2014).

In this case, the SRO concluded that Diaz's 2021-22 claims were time-barred because Diaz knew or should have known of the alleged violations either when she attended and expressed concerns at the March 17, 2021 CSE meeting or, at the latest, when

14

N.D. began attending the public school placement designated by the IEP. See Admin. Rec. 16. On that view, the limitations period began to run on either March 17, 2021, or in September 2021, when N.D. began attending the DOE placement. See id. Because Diaz did not file the DPC until April 19, 2024, her claims relating to the 2021-22 school year were brought beyond the two-year limitations period under either accrual date.

Courts in this Circuit have applied the same accrual theory. Claims may accrue when the parent participates in the CSE process and is aware of the alleged deficiencies. See Bd. of Educ. v. C.M. ("C.M. II"), 744 F. App'x 7, 9-10 (2d Cir. 2018) (holding that the plaintiffs' claims accrued when the district denied their request for a residential placement at a CSE meeting while the parents and the student's psychotherapist insisted the student required a residential placement). Claims may also accrue, at the latest, when the student begins attending the challenged placement or class arrangement, and the parent can observe the alleged harm. See Avaras v. Clarkstown Cent. Sch. Dist., No. 15-cv-2042, 2017 WL 3037402, at *15 (S.D.N.Y. July 17, 2017) ("Plaintiff knew or should have known that he was — in her view — inappropriately sequestered away from his mainstream peers in a setting that was not tailored to address his potential dyslexia.").

15

Diaz contends that she became aware and could have known of the alleged denial of a FAPE only after iBrain fully assessed N.D. Pl.'s Reply 7, ECF No. 21. That cannot be the governing standard. Courts in this District have rejected similar arguments that a parent could not have known of a denial of FAPE until obtaining a later evaluation or alternative assessment. N.J. v. N.Y.C. Dep't of Educ., No. 18-cv-6173, 2021 WL 965323, at *10 (S.D.N.Y. Mar. 15, 2021); Phillips v. Banks, 656 F. Supp. 3d 469, 486 (S.D.N.Y. 2023), aff'd, No. 23-362, 2024 WL 1208954 (2d Cir. Mar. 21, 2024). This is so because "the key question is not whether the parent is aware of the particular diagnosis, but whether the parent is aware (or should be aware) that the child has a disability and that the disability is not being adequately accommodated in the classroom." N.J., 2021 WL 965323, at *10.

Diaz argues that the record contains no evidence that she was ever provided a procedural safeguards notice — namely, a written notice required by 20 U.S.C. § 1415(d)(1)(A) to explain the procedural protections available to the parent and child in the special-education process. Pl.'s Mot. 11–12. She contends that, as a result, the limitations period should be tolled under the IDEA's "withholding" exception, which applies when the local educational agency withholds information from the parent that was required under 20 U.S.C. § 1415(f)(3)(D)(ii). Id.

16

However, that argument shifts the burden of raising the exception. The burden of establishing an exception to a statute-of-limitations defense rests with the plaintiff so that the IHO can make the appropriate determination based on the record. See Dervishi v. Stamford Bd. of Educ., No. 21-cv-1184, 2023 WL 2712610, at *6 (D. Conn. Mar. 30, 2023) (declining to toll the statute of limitation because the "[p]laintiff has not shown, by a preponderance of evidence, that either of the two possible exceptions apply here"); see also D.K. v. Abington Sch. Dist., 696 F.3d 233, 243 (3d Cir. 2012) (evaluating "whether [the] [p]laintiffs proved an exception to the 2004 IDEA statute of limitations"). In this case, because Diaz did not raise the "withholding" exception before the IHO, see Admin. Rec. 215-26, 1005-18, she forfeited that argument.

In any event, courts have rejected the invocation of the "withholding" exception where the parent knew or should have known of the alleged violations and was not prevented from timely filing a DPC due to the DOE's alleged failure to provide a procedural safeguards notice. See Bd. of Educ. v. C.M. ("C.M. I"), No. 16-cv-3924, 2017 WL 2656253, at *9-10 (S.D.N.Y. June 20, 2017); C.M. II, 744 F. App'x at 11. The relevant inquiry is whether the alleged withholding actually prevented timely filing. See C.M. I, 2017 WL 2656253, at *10.

In this case, Diaz knew or should have known of the alleged denial of a FAPE at the March 17, 2021 CSE meeting or, at the latest, when N.D. began attending the DOE's designated placement in September 2021. Indeed, after her claims relating to the 2021-22 school year had accrued, Diaz continued to raise concerns at the 2022 and 2023 CSE meetings and ultimately placed N.D. in a different school in September 2023. On this record, Diaz has failed to show that she lacked either the opportunity or the knowledge to pursue her claims. To the contrary, the record indicates that she was actively doing so. Therefore, Diaz has failed to show that she was prevented from timely filing her DPC solely because of any alleged failure to provide a procedural safeguards notice.

Accordingly, because Diaz did not timely file a due process complaint asserting claims relating to the 2021-22 school year, the SRO correctly determined that those claims are time-barred.

### C.

Diaz also argues that the SRO erred in concluding that the DOE provided N.D. a FAPE for the 2022-23 and 2023-24 school years. Pls.' Mot. 12-16.

Under New York Education Law § 4404(1)(c), the school district bears the initial burden at the due process hearing of establishing the appropriateness of its recommended program. If the district fails to carry that burden, the parents must

18

establish that their unilateral private placement was appropriate and that equitable considerations favor relief. Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 (2d Cir. 2005); C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ., 746 F.3d 68, 72 (2d Cir. 2014). This framework is commonly referred to as the Burlington/Carter test. See Sch. Comm. v. Dep't of Educ., 471 U.S. 359 (1985); Florence Cnty. Sch. Dist. Four v. Carter, 510 U.S. 7 (1993).

With respect to the 2022–23 school year, Diaz did not appeal the IHO's denial of relief based on the equities. As the SRO observed, any discussion of the 2022–23 school year would therefore be purely "academic." Admin. Rec. 18. In other words, even if this Court were to agree with Diaz that the DOE denied N.D. a FAPE for that school year, such a ruling would not entitle Diaz to any additional relief. Because federal courts may not issue advisory opinions or decide questions that cannot affect the rights of the litigants before them, see North Carolina v. Rice, 404 U.S. 244, 246 (1971), the Court lacks jurisdiction to decide this issue.

In any event, Diaz essentially seeks damages for the failure to provide a FAPE for the 2021–22 and 2022–23 school years. See Admin. Rec. 224-26. By seeking alleged "compensatory education" at iBrain, Diaz is seeking damages for the failure to provide a FAPE during the 2021–22 and 2022–23 school years,

19

which is not available under IDEA, as both the IHO and the SRO found. See Polera v. Bd. of Educ., 288 F.3d 478, 486 (2d Cir. 2002) ("The purpose of the IDEA is to provide educational services, not compensation for personal injury, and a damages remedy — as contrasted with reimbursement of expenses — is fundamentally inconsistent with this goal.")

With respect to the 2023-24 school year, while the IHO found that the DOE failed to provide N.D. with a FAPE, the SRO disagreed and found that the DOE did provide a FAPE. See Admin Rec. 26-27. Diaz argues that the SRO erred because the prior written notice did not identify the basis for the IEP beyond a reference to a social history assessment. Pl.'s Mot. 13. Diaz also points to testimony from a DOE witness that the CSE considered the NYSAA and the SANDI results, but those materials did not appear in the administrative record or were not used to make the recommendations for N.D. Id. Diaz also argues that the witness could not address the results of certain other tests. Id.

As the SRO correctly noted, these alleged deficiencies are procedural in nature and ignore the substance of the record because the 2023 IEP and the IHO hearing record reflect that the March 2023 CSE relied on sufficient information from multiple evaluations. Admin. Rec. 24. "[I]t does not follow that every procedural error in the development of an IEP renders that IEP legally inadequate under the IDEA." Grim v. Rhinebeck Cent. Sch.

Dist., 346 F.3d 377, 381 (2d Cir. 2003). Procedural violations warrant relief only if they "impeded the child's right to a [FAPE]," "significantly impeded the parents' opportunity to participate in the decision making process," or "caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii); see also A.C. ex rel. M.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist., 553 F.3d 165, 172 (2d Cir. 2009).

On this record, the March 2023 IEP was supported by sufficient evaluative information. The SRO found that the DOE had obtained evaluative information about N.D. through the SANDI scores, the NYSAA decision-making checklist, the SFA, the GMFCS, teacher observations, and analyses by N.D.'s therapy providers. Admin. Rec. 23-24. The SRO further found that this information assessed N.D.'s academic functioning, communication, socio-emotional skills, gross motor skills, and adaptive and daily living skills, while also taking into account parental input and N.D.'s prior-year IEPs. Id. at 22-24.

The SRO also noted that the information showed that N.D. had made progress in his SANDI score, AT use, communication, physical therapy, and occupational therapy. Id. at 23-24. At the same time, the SRO recognized N.D.'s continuing difficulties with memory, problem solving, temper management, and bilateral hand use, and concluded that the recommended IEP appropriately

21

addressed those needs through, among other things, a "highly structured instructional environment," "access to small group" instruction, various prompting strategies, and ongoing physical therapy. Id.

In light of the evidence supporting an appropriately tailored recommended IEP, omissions in the record of additional references to or copies of those assessments do not, without more, establish that N.D.'s right to a FAPE was impeded or that N.D.'s educational benefits were deprived. See, e.g., F.B. v. N.Y.C. Dep't of Educ., 923 F. Supp. 2d 570, 585 (S.D.N.Y. 2013) ("[T]he lack of a provision in an IEP . . . does not inherently result in the denial of a FAPE."); R.E., 694 F.3d at 193 (explaining that where an IEP otherwise contained adequate strategies to address the student's needs, the challenged deficiency did not amount to a denial of a FAPE).

Additionally, Diaz attended the March 21, 2023 CSE meeting, as well as the two prior CSE meetings in 2021 and 2022, and raised concerns during those meetings. For example, in response to Diaz's concerns about N.D.'s lack of AT use, the March 2022 IEP addressed N.D.'s use of AT and noted that he used his device "intentionally and accurately during highly motivating [activities] such as playing, eating, drinking, and labeling colors." Admin. Rec. 533. The 2023–24 IEP likewise noted that the recommended program addressed Diaz's concerns about N.D.'s use of AT

by providing suggestions and resources for appropriate use of the device at home and by facilitating opportunities for N.D. to communicate functionally. Id. at 591, 593. The IEP also recommended therapy that would continue to target answering questions in structured activities using a total communication approach. Id. at 593.

Under these circumstances, the lack of additional detail in the prior written notice, standing alone, does not amount to a procedural violation that significantly impeded Diaz's opportunity to participate when, in fact, she participated in that process, and the DOE had considered and addressed her concerns. See E.F. v. N.Y.C. Dep't of Educ., No. 12-cv-2217, 2013 WL 4495676, at *24 (E.D.N.Y. Aug. 19, 2013) (holding that procedural errors did not amount to a denial of a FAPE where the parents fully participated in the CSE process).

Diaz also contends, in conclusory fashion, that the DOE failed to provide N.D. a FAPE because it did not conduct a vision assessment, despite knowing that N.D. had previously worn glasses, and did not conduct an AT assessment or a neuropsychological assessment. Pl.'s Mot. 13–14.

This issue implicates the educational judgment and expertise of the SRO, and the SRO's appropriate determination, therefore, warrants substantial deference. See M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ., 725 F.3d 131, 140 (2d Cir. 2013)

23

("[W]e have decided that whether an IEP adequately addresses a disabled student's behaviors and whether strategies for dealing with those behaviors are appropriate are precisely the type of issues upon which the IDEA requires deference to the expertise of the administrative officers."). Although the IHO and the SRO reached different conclusions on this issue, "the general rule is that courts must defer to the reasoned conclusions of the SRO as the final state administrative determination." R.E., 694 F.3d at 189.

First, the SRO noted a disconnect between the omitted vision evaluation and the alleged deficiencies in the IEP: Diaz's DPC did not allege that the recommended IEP was deficient because it failed to accommodate N.D.'s visual impairment. Admin. Rec. 24. Rather, Diaz complained only that a vision assessment had not been conducted. Id. A mere lack of certain assessments, without more, cannot be a violation of IDEA per se. As the SRO correctly noted, "IDEA does not compel a school district to perform every sort of test that would arguably be helpful in devising an IEP for a student." Mackey v. Bd. of Educ., 373 F. Supp. 2d 292, 299 (S.D.N.Y. 2005); see also R.E., 694 F.3d at 195 (holding that there was no violation of IDEA when the issue was not severe enough to warrant an assessment).

Moreover, Diaz alleged in her DPC that the DOE failed to conduct an AT evaluation to determine what device or service

24

changes N.D. needed to make progress in his communication skills and overall curriculum. Admin. Rec. 223. However, "[f]ailure to conduct an [assessment] does not render an IEP legally inadequate under the IDEA so long as the IEP adequately identifies a student's behavioral impediments and implements strategies to address that behavior." M.W., 725 F.3d at 140. In this case, the 2023 IEP already contained substantial evaluative information concerning N.D.'s communication needs, including teacher observations and assessments of his speech and language, adaptive behavior, and social development. Admin. Rec. 585, 589, 591, 593, 596.

Similarly, although Diaz alleged that the DOE failed to conduct a neuropsychological assessment to determine N.D.'s actual needs and abilities, id. at 224, the 2023 IEP contained evaluative information concerning similar subjects, such as N.D.'s motor functioning, adaptive behavior, speech and language, social development, and physical development, and it addressed N.D.'s identified needs, id. at 583, 589, 596, 598.

In light of the evaluative information reflected in the 2023 IEP, together with the SRO's thorough analysis and reasoned conclusion that the recommended IEP was appropriate for N.D.'s needs, the SRO did not err in concluding that the DOE's failure to conduct a vision assessment, an AT assessment, and a neuropsychological assessment did not invalidate the 2023 IEP.

Therefore, the SRO did not err in concluding that the DOE provided N.D. with a FAPE for the 2023-24 school year.

**D.**

Despite the SRO's noting his inclination to affirm the IHO's denial of relief for the 2023-24 school year on equitable grounds, Diaz contends that the SRO erred by failing to consider the equities. Pl.'s Mot. 16-20. However, under the Burlington/Carter framework, a reviewing officer need not reach the issue of equitable considerations if the school district has provided the student a FAPE. See Polanco v. Porter, No. 21-cv-10176, 2023 WL 2242764, at *7 (S.D.N.Y. Feb. 27, 2023), aff'd sub nom. Polanco v. Banks, No. 23-373-cv, 2024 WL 2105530 (2d Cir. May 10, 2024) ("Because [the plaintiff] has not been denied a FAPE, it is unnecessary to reach the latter prongs of the analysis."). Because the SRO determined that the DOE offered N.D. a FAPE for the 2023-24 school year, the SRO was not required to consider the equities.

In any event, Diaz would not prevail on equitable grounds. The IDEA provides that reimbursement "may be reduced or denied" if, at least "10 business days . . . prior to the removal of the child from the public school," the parents failed to give written notice that they were rejecting the proposed placement and intended "to enroll their child in a private school at public expense." 20 U.S.C. § 1412(a)(10)(C)(iii)(I).

26

In this case, Diaz enrolled N.D. at iBrain in September 2023 but only noticed the DOE in March 2024. Diaz failed to comply with that notice requirement and only notified the DOE of the unilateral placement over six months after the placement had already occurred, thereby depriving the DOE of any meaningful opportunity to address her concerns before N.D.'s removal. Under those circumstances, the IHO and the SRO correctly concluded that the equities do not favor Diaz under the third prong of the Burlington/Carter framework. See Mejia v. Banks, No. 23-cv-6401, 2024 WL 4350866, at *7-8 (S.D.N.Y. Sep. 30, 2024), aff'd sub nom. Mejia v. Samuels, No. 24-2901, 2026 WL 554627 (2d Cir. Feb. 27, 2026).

In sum, Diaz's claims relating to the 2021-22 school year are time-barred; Diaz's claims for the 2021-22 and 2022-23 school years are barred because she failed to appeal the denial of relief for those years and the request for alleged damages for those years is not an available remedy, in any event; the DOE offered N.D. a FAPE for the 2023-24 school year; and equitable considerations do not favor Diaz's request for relief for the 2023-24 school year.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit. For the foregoing reasons, Diaz's

27

motion for summary judgment is **denied,** and the DOE's cross-motion dismissing the entirety of Diaz's complaint is **granted.**[3]

The Clerk is directed to close all pending motions in this case. The Clerk is also directed to enter Judgment dismissing the complaint with prejudice.

SO ORDERED.
Dated:    New York, New York
          March 19, 2026

_____
John G. Koeltl
United States District Judge

_____

[3] Diaz's complaint also seeks additional relief, including an order directing the DOE to fully fund N.D.'s iBrain program and an award of attorney's fees and costs. See Compl. 12-14. However, the parties' summary judgment motions do not address those requests. In any event, Diaz's requests for damages and attorney's fees appear to be premised on her success under the Burlington/Carter framework. Because Diaz is not entitled to relief under that framework, the DOE's motion for summary judgment dismissing those additional requests for relief is also **granted.** The plaintiff is not entitled to additional relief.

28